We'll hear argument first this morning in Case 14-8913, Molina-Martinez v. United States. Mr. Crooks. Mr. Chief Justice, and may it please the Court, as this Court recognized in Pugh v. United States, the United States sentencing guidelines remain uniquely central to Federal sentencing, even where the district court ultimately chooses to sentence outside the guidelines. Because of the strong anchoring effect of the guidelines, as also recognized in Pugh, the natural effect of an erroneously high guideline range is to skew a defendant's sentence higher than it would have been under the correct range. Yet when the district court has elected to sentence within what it believes to be the correct range, it is typically very difficult to determine what the district court would have done had it been presented with the correct lower range. Mr. Crooks, you didn't cite 18 U.S.C. 3742F, and I wondered why, because it reads, if the court of appeals determines that the sentence was imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate. So this seems to say that if the incorrect – there was an incorrect application of the guidelines, then a remand is mandatory. It does appear to say that, Justice Ginsburg. However, I believe in this Court's decision in Williams v. United States, the Court said that guideline errors are nonetheless subject to the normal doctrines of harmless and plain error review and not subject to automatic reversal. And so it's not clear that there was a guidelines violation here. The guidelines were incorrectly calculated, but it's not clear that at the end of the day there was a violation. I mean, is that really your response, Justice Ginsburg, or am I oversimplifying? There was a misapplication of the guidelines, but harmless and plain error doctrines apply to determine the remedy for that violation or misapplication. Well, there was a miscalculation. I'm not sure if there was a misapplication. That's – I suppose that's the issue in the case. Or is this quibble wrong? We believe that there was a misapplication because the guidelines were incorrectly calculated with respect to the defendant's criminal history. And that is the type of thing that the statute Justice Ginsburg was referring to says you should remand for subject, of course, as this Court said in Williams, to the normal doctrines of harmless and plain error. And we're here today, of course, on a plain error case because we have a guideline misapplication that, unfortunately, was not discovered by anyone below. Well, you say that when there is a – excuse me – a miscalculation of the guidelines range, that should give rise to a rebuttable presumption that the miscalculation affected the sentence that the judge imposed. That's correct, Justice Alito. What does that mean? Does that mean that the burden of persuasion shifts to the prosecution? We believe that the Court's opinion in Alano actually supports a conceptualization that it simply gives the defendant an alternative way to satisfy his burden of persuasion, which is done in a generalized rather than a case-specific way. Suppose there's no evidence, as may very often be the case. Suppose the judge says, imposes a sentence within what the judge believes to be the guideline range, but says nothing whatsoever beyond that, and it turns out that that is not the correct guidelines range, so that there's no evidence one way or the other about what the judge would have done had the judge understood the correct guidelines range. What outcome in that situation? In that situation, typically the result would be that the third prong of plain error review would be satisfied, and the defendant would have shown an effect on his substantial rights. So that means that the burden of persuasion in that situation is on the prosecution. Again, we may be quibbling about terms, but we believe that the defendant satisfies his burden of persuasion with generalized evidence tending to show that the natural effect of a guideline error is to affect the sentence. Sotomayor, I don't think I understand the difference between general and specific. Evidence is evidence, and you draw inferences from all sorts of circumstances, so I don't know why you call this general. It's evidence. Okay? Let's assume the guideline was 70 to 100, the erroneous guideline was 80 to 100, and the right guideline was 70 to 100. Would we you draw a general inference that the corrected guideline would have made any difference on that sentence? We would, Your Honor. Our position is that any time the range is not the correct range, there should be a presumption that it affected the prescription. So what changed the judge's mind in terms of the facts? He gave you the max when it was 80 to 100. What's going to change his mind about 70 to 100? Because the fact that the sentencing commission gave a different range in its expert advice and its expertise is something that this Court has recognized factors heavily into district courts. Let's assume I don't believe there's a presumption, okay? It's very hard for me to understand what difference between 70 and 100 and 80 and 100 could make. In this case, I have a difficulty understanding what difference the criminal history category would make. But I'll give you another example of overlapping guidelines. A defendant who's never committed a crime and a defendant who has committed a crime. I would be more inclined to say that an inference from the facts is that a defendant who's never been committed of a crime, that the judge might take that into consideration, even in an overlapping guideline case, and send it back, because we don't know how much mercy that judge might have shown. But if a defendant like yours has many criminal convictions, I'd be pretty close to saying I don't think he's going to make much of a different choice. But on the other hand, Your Honor, in this case, despite Mr. Molina-Martinez's criminal history, the district judge imposed the bottom of what he believed the guidelines to be, despite the government's request for a sentence at the top end of the guideline range. And our position is that the natural pull of the guidelines is so strong, so influential, that it is going to pull the judge toward the erroneous range, and therefore  Scalia. Scalia, let me ask you this. You fail to object to the erroneous use of the guidelines. If you had objected, what would the situation be? You would have to establish that the error was not harmless, or the government would have to establish that it was harmless, right? Would there be a presumption of non-harmlessness? I believe under Rule 52a there is, in effect, a presumption of non-harmlessness that the government must rebut. The government must show that the error was harmless. To show that the error was harmless is the same as saying there is a presumption that it wasn't harmless. I believe that is, in effect. That's not the way I normally talk. I would normally say the burden of establishing it is on the government, but I wouldn't say there is a presumption that the government is wrong. But if the government makes no effort to do anything with respect to harmlessness, then the case will be reversed, or there will be a. The government says that you are, in effect, making the standard harmless, that you admit that this is a plain error case, and yet your presumption, effectively the burden is on the government, is making this into a harmless error situation. It is, but in a way, but only for the limited class of errors that are guideline range errors. Under Rule 52a, the government must show harmlessness for every type of error. Kennedy, I don't understand. Kennedy, under Justice Alito's questioning, he asked you, isn't it true that you have the burden of persuasion at the outset to show that there was a miscalculation? Once you meet that, his question was, does the government then, I believe his question was, does the government then have the burden of persuasion to show no error? He was careful not to use the word presumption, or at least he did not use the word presumption. Is that the proper way to think of this case in your view? Another way of asking the question that continues with what Justice Alito was inquiring, do we need to use the word presumption here? I don't think the word presumption is absolutely necessary. It is the word that the Court used in Olano, but I think it's really viewed more as who bears the risk of nonpersuasion. And what we're asking is that in the very limited context of a guideline range error, the defendant should be deemed to have carried his burden by the generalized evidence that this Court recognized in Pugh v. United States, that the guidelines do affect sentences and that guideline ranges do affect what the district court does. Sotomayor, where have we done that before? I mean, we had dictum in United States v. Olano which said that there may be a special category, there may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome, but this issue need not be addressed. And you're saying, and we have not found any such category in the past. You're saying we have finally discovered one category that meets that dictum in Olano. Well, the lower courts, this Court has not found a presumption since Olano, but the Court did give careful consideration to whether a presumption should apply to the particular type of error at issue in Olano. But more importantly, the lower courts have looked to what this Court said in Olano and in a tiny handful of errors, they have adopted just such a rebuttable presumption. That's more important, that the lower courts have established the law for us? It's not. It seems to me we established the law and we have never found anything to come within that language in Olano, and it's dictum and maybe it's wrong. We believe that it's not wrong and that the lower courts' decisions, of course, do not bind the Court, but they are expressive of the experience of lower courts. Kagan.  Kagan. But, Mr. Crooks, if I could take you back to your answer to Justice Kennedy. I take it that you don't need to use the word presumption, right? Your — the burden that you have to carry in a plain error review is you have to show a reasonable probability, and your argument would work just fine if you dropped the word presumption, isn't that right? And you just said that the anchoring effect of the guidelines creates a reasonable probability that the outcome would be different in a case in which the Court initially thought that the range was different from what it turned out to be. Sort of the end. Who needs the word presumption? We agree, Justice Kagan. Unfortunately, the Fifth Circuit did not. But we do believe that however you conceptualize it, the draw, the pull of the guidelines is, because of the unique centrality of the guidelines, sufficient to establish the reasonable probability of a different result. Scalia. What good does it do to say that the guidelines are advisory, which is what we have found, if when you mistake them or when you don't apply them properly, you automatically get a reversal, which is what you are arguing here? Does that sound like an advisory guideline? Well, Justice Scalia, we disagree. It's an automatic reversal. Besides the third prong of plain error review, there are two other very stringent prongs, the second and the fourth, that must be met before there can be a reversal on plain error. But with respect to the question of whether it makes the guidelines any less advisory, we don't believe that it does. It simply recognizes the fact that even though they are now advisory, district court judges still find them influential and persuasive, as this Court indicated they should do in Rita. How did this error come to light? Everybody missed it in the district court. It started with the probation officer, the judge, and the defendant. How did you do that? How was it found out? Well, actually, it was missed initially even on appeal, because I wrote an Anders brief, and the defendant wrote a response and pointed out that one of my factual premises was incorrect. So the defendant thought, detected the error. Correct. And when I saw it, I realized immediately I had made a mistake, and I filed a merits brief with the Fifth Circuit instead of an Anders brief, and it preceded the oral argument in the Fifth Circuit. The government conceded that there was an error that was plain, but they disputed that it affected substantial rights because of the overlap of the guidelines. Alito, your argument has some appeal on the facts of this case, because the judge sentenced the defendant to a sentence at the bottom of what the judge understood to be the guideline range. But would your argument apply to any sentence that was within both the original and the correct guideline range? Suppose the judge here had sentenced your client to 87 months, which I think is the top of the correct guideline range. Would the same situation you can you infer from that that the judge would not have the, the judge thought that the top was 96, the judge chose 87, that happens to fall within the correct guideline range. On those facts, would you infer that the judge would have imposed a lesser sentence? Our answer is that whenever the range changes in the absence of any other indication, you should infer that the sentence, there is at least a reasonable probability that the sentence would change. There may be other contextual factors besides the high end of the guidelines that would allow the government to show that, in fact, it wouldn't have made a difference. But if I understand Your Honor's question correctly, with only the difference in the range, we believe that that is a situation where you should assume there's a reasonable probability. Roberts. Roberts. I was just going to say, under that, I suppose the defendant really wouldn't insist on a resentencing if that were the, those were the facts, would he? In other words, it was incorrectly a maximum of 87, and he got the maximum. And you say, oh, well, the correct one could give you up to 96. If I understand it, the defendant's not going to raise that objection, is he? If he believes that he could get more, but if, for example, in this case, the incorrect range was 77 to 96, if he got 96, he might well insist upon appealing, because he might think the judge would give me the high end of the correct range. Alito, I mean, the question is if the judge, the judge thinks it's 77 to 96 and chooses 87, which is within that range, and it turns out the correct range is 70 to 87. So the 87 is within the correct range as well. It's the top of the correct range. What reason would there be to infer, why would there be a natural probability that the judge would have given a lesser sentence if the judge thought that the top was 87 as opposed to 96? The judge obviously thought in that situation the correct sentence is 87. With respect, I have to disagree with your premise, because I don't believe judges just pick numbers. I believe they look at the guideline range and typically determine whether the defendant should be low, middle, or high. So the guideline range does make a difference, and it does. Breyer. Here's an example. Suppose a person, everybody, pre-sentence report, government, defense lawyer, prosecutor, everybody thought he's in column 2, okay? He's not a first-timer. And now it turns out they made a mistake. He is a first-timer. And so being a recidivist, the pre-sentence report says put him at the top of the range. Now it's a lower range, but they know he's not a recidivist. Depending on the circumstance, they might say, hey, no, put him in the middle of the first-timers. I don't know, you don't know, they don't know, nobody knows. And so the question is, we don't know really what the judge will do upon remand. Common sense suggests, ask him. That's what it suggests. And so you're worried about whether you can work the language around to let you do that, what is common sense. I'll ask some questions for the other side, which I suspect you can, but nonetheless. Isn't that the issue? That is the issue, and we've been. Scalia Let's factor in the fact that you did not object. Surely, surely there ought to be a penalty for that. We don't treat cases where there has been an objection the same as we treat cases where there has not been. Sending it back makes total sense when there's an objection that's wrongfully denied. But where you or defense counsel has in effect assisted the Court's error, it seems to me we demand more. And the Court does demand more. It is much more difficult to secure relief on plain error review because of the other prongs of the rule. But anyway, we've got progress because it does make sense. And if we've got progress, it is not a punishment to the lawyer for not having raised it. It is a set of circumstances where the result will make sense without unnecessary  That's what I'm saying. Scalia It's not a matter of punishing the lawyer, is it? It's a matter of establishing a system that induces lawyers to make objections when objections are proper. And not to mousetrap the Court into error by not objecting. What are the other two elements that you think serve that purpose? First, the second and the fourth prong is the answer to your question. But first, I have to say  What are the second and fourth prongs? The second prong is that the error must be plain, which means it's not subject to reasonable dispute. Scalia Well, that's no big deal. That doesn't satisfy my problem. Well, many guideline errors are not. We have had plain error relief denied repeatedly on the second prong. The fourth prong, that it must seriously affect the fairness, integrity, and public reputation of judicial proceedings, is another hurdle that the defendant must meet on plain error review. A person is not in a better position by not objecting. A person would be foolish not to make an objection that would lower the range, because it's always better in a sentencing proceeding to start out with a lower range, even if you're going to ask for something below the guidelines. Ginsburg It's not disputed here. Everybody missed it. You missed it, and you were candid in saying even on appeal you were ready to file an Anders brief until the defendant himself. Yes, Your Honor. In fact, I did file an Anders brief. Scalia It's not enough that the lawyer did not intentionally do it. We demand of lawyers that they do it. They're supposed to assist the court. And where the objection has not been made, it's an entirely different case when it comes up here. But I would suggest, Justice Scalia, that it is still far more difficult to secure relief on plain error review, even with the tweak to the third prong that we're going to make the objection in the first place. Alito Well, can you give us an example of a Guidelines error that would qualify for — qualify as a plain error, except for its failure to satisfy the fourth prong of Olano? Scalia Yes. In our reply brief on page 22, we cited the Fifth Circuit's decision in the United States v. Duque Hernández, and in that case, the Fifth Circuit actually pre-dermitted the first three prongs of plain error review and said, even if you meet these, you lose on the fourth prong for three different reasons. First, the Court said that the defendant had, in fact, admitted the criminal conduct that underlay the controverted sentencing guideline enhancement. Second, there was an issue of quasi-dirty hands because the defense attorney had failed to make an objection that the same defense attorney had made in a previous illegal reentry case. And third, the defendant had an extraordinarily serious criminal history involving drugs and guns. And that is an example — one example. There are others where the Fifth Circuit has applied the fourth prong very stringently. Ginsburg Who would apply it? Kennedy Well, in that case, would you still send it back to the district judge to ask him, in the case you just put? We're trying to — let's assume that we're going to give you some relief. That is far from clear, but let's assume that. We're trying to find out what the rule ought to be, what the standard ought to be. In the case you just explained to us, in your view, should that case go back to the district court? Scalia The case that I just described? Kennedy Yes. I don't know whether I necessarily agree with that application of the fourth prong of plain error. Ginsburg Who applies the fourth prong in the first instance? Is it the Court of Appeals? So you're saying that even if the Court of Appeals gets through the first three, it doesn't remand for the district court to apply the fourth test if the Court of Appeals does that itself? Scalia Correct. And if the defendant cannot satisfy the fourth prong of plain error review, there's no reversal and no resentencing. Kagan So I would think that the answer to Justice Kennedy's question is if the Court of Appeals really thinks it's not going to give relief because of the fourth prong, why would you bother remanding it? Scalia Why would the Court of Appeals bother remanding it? They could legitimately say it doesn't matter. We're not going to remand it, because whatever happens on remand, we're not going to give relief based on the fourth prong. And if that's the case, why would the Court of Appeals remand it at all? Scalia The Court of Appeals, if the defendant does not satisfy the Court of Appeals is not satisfied that the defendant has met his burden on the fourth prong, it will not be remanded. The judgment will be affirmed. And I would like to save the remainder of my time for rebuttal. Ginsburg May I just ask you to answer the government's position that if there's no presumption, it's not in your question presented, so that you are locked into the way you phrased the question, that should an appellate court presume? Scalia Just very briefly, our answer is that the Court, in the cases we cited in the reply brief, has gone on to consider the merits of a case after deciding a legal question presented by the Petitioner. And certainly, the Court always has the power and the discretion to address a question even that was not in the question presented or addressed in the court below. And here, the court below undisputably addressed it, and even if the court does not endorse the presumption we asked for, it would be useful guidance to the lower courts on the application of the third prong. Roberts Thank you, counsel. Mr. Meisler. Meisler Mr. Chief Justice, and may it please the Court. This Court should not adopt the presumption that all misapplications of the sentencing guidelines are presumptively prejudicial for three main reasons. First, a presumption is not supported by this Court's plain error precedents or general principles of appellate review for harmlessness. Second, a presumption is unnecessary because courts of appeals are capable of discerning prejudice on a case-specific basis. And third, a presumption ill-serves the policies that underlie Rule 52b, in particular the need to induce timely objections in the district court. Roberts I am concerned about getting hung up on the labels, okay? If you don't say it's a presumption, we still have, don't we, the question of what happens if nobody – who loses if there's no evidence to move one way or another in a tie? It doesn't matter if you call it a presumption or not. Who bears the burden of at least moving forward, and certainly the burden of proof, if one of these errors is on the record? I think, Your Honor, this Court's decisions in Alano, United States v. Vaughan, resolve that question. It makes clear that the burden is on the defendant under plain error review. That is what the Court has said is the main difference on prong three, on the substantial rights prong, between plain error and harmless error review. Kagan But let's say that's right. Yes, the burden is on the defendant. But does the defendant meet that burden by saying, look, there was a mistake in the guidelines, we know that there's an anchoring effect, that's what the Court said in Peugh, that anchoring effect creates a reasonable probability that the Court would have done something differently. So our answer, Your Honor, is that the – there's no, I guess what Mr. Crooks calls a generalized showing. I think it has to be done on a fact-specific basis. Breyer That is fact-specific. I mean, I have exactly the same question as Justice Kagan had. Forget all the jargon. You're a lawyer. You want to prove that it rained at noon on the 5th of February. Your witness says, I heard pitter-patter on the roof. I looked outside, water was going by the window. Anything else? No. Well, it might have been the window washer. But there's no jury that couldn't find that it was raining. Same thing here. Case after case, this Court has said, we assume, we presume, or they don't even use those words, the guidelines influence the sentence. That's what they meant by the word anchor. If you look at the reality, whether they depart or don't, whatever you call it now, there's some special word, you can find evidence after evidence. Of course the guidelines affect the sentence. Maybe there's an unusual case and they don't. The reason the judge doesn't say anything is because in Rita we said that if you say nothing, Judge, then the appellate courts are to assume it was reasonable, and therefore the judge now says nothing. He just applies the guideline. So we'd have to overcome about five cases in terms of what we said if we are going to rebut the common-sense notion that, of course, using the wrong guideline had an effect on the sentence. If it's an unusual case, i.e., if it's the window washer, let the government show it was the window washer. But the normal case, pitter-patter means rain, and the normal case is that the judge, when he uses the guidelines or even when he uses them as a basis and says I'm departing, that that made a difference. Well, I think, Your Honor, there's a number of points in there. To my mind, that's a question of how much weight to give the bare fact of the error. Of course, the error in this case is you used the wrong range. And so I think your – from what I understand Your Honor's position to be is that the bare fact of the error, the difference in the range itself establishes an effect on substantial rights. That's not usually how we do it. We say you have to look at the particular facts and circumstances in the case, and I think Your Honor's position is that. Ginsburg-Miller Can you give a concrete example of what you mean? I mean, my intuition is the same as Justice Breyer and Justice Kagan, that if you apply the wrong guidelines, then there's a reasonable probability that he would have received a lower sentence. But you say he has to show – what would he have to show concretely? Give me an example of what is a reasonable probability that he would have received a lower sentence. Well, I think there's two points to that, Justice Ginsburg. One is what the appellate court's going to have before it in every guidelines error case, which is the nature and the magnitude of the error. The court's going to know, is this a career offender bump that changes the defendant's offense level and criminal history and could double his range, or is it, as in this case, a one-level movement on – because of a criminal history scoring error that the sentencing guidelines themselves say you can offset with a departure because it leads to underrepresentation of the defendant's recidivist potential. So the court's going to know nature and magnitude. And by magnitude, I mean, are we talking one level, are we talking 16, are we talking 9? So there are going to be many cases, and I don't dispute that. Breyer. There will be many, and there are many cases involving RAIN. Many. I mean, I don't know how many thousands, but there are many common facts in thousands of cases where the government itself uses very similar kinds of evidence in order to show that it was really RAINing. And here what we're doing is we're using very similar kinds of evidence, namely that he used the Rome guideline, in order to show that, in fact, better, more probable than not or pretty probable or whatever reasonable probability that it made a difference. So, I mean, I don't see this as special. Well, I think it is special because, of course, it would be the first-ever presumption of prejudice that this Court recognizes. Kennedy, you were taking a RAIN. Kennedy, that's because you're using the term presumption. You don't have to use the term presumption. You can say that this defendant has met his burden of persuasion. We make the assumption here, we, few of us have practiced under the guidelines, maybe none of us, that the guidelines are the beginning point in almost every sentence. That's the beginning point, not the ending point, but the beginning point. And the question is, once this is shown, why, at a minimum, can't you just ask the district judge? Now, if you want to say that they're sentencing miscalculations in 20 percent of the cases, that they happen all the time, that this is going to burden the courts, I suppose you can make that argument. But many circuits, or some circuits at least, have the rule. They just remand to ask the district judge. I'm not sure that's how plain error review has ever been conceived of, Justice Kennedy. I mean, Your Honor asked before, what's our rule? You know, what is the rule the Court can announce in this case without calling it a presumption? And if the Court wants to opine in this case about what the standards should be, we think the Court could say something such as that a difference in the range, the use of the wrong range, creates some likelihood in every case that the sentence will be different. But whether that likelihood rises to the required level of a reasonable probability is going to depend on the facts and circumstances. Kagan. Kagan.           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. So if you're using the wrong range, there's a significant risk that you would have made a different decision. So significant risk actually seems higher to me than reasonable probability. At least it's not demonstrably lower. So I would think that we've already said, if you're using the wrong range because of the anchoring effect of the range, an anchoring effect that is kind of mandatory, it's, you know, we say that these guidelines are advisory, but we insist that a judge begin with them. So if you're using the wrong range, there's a significant risk. I would think so, too, of reasonable probability. Why is there a difference? I think there's two points on Pew, Your Honor. The first one is that Pew itself in footnote 8 says that this is a ex post facto error that implicates constitutional concerns. And the Court said, you do the regular Chapman v. California harmless error analysis. Petitioner concedes that when it's a nonconstitutional guidelines error under Williams v. the United States in Rule 52a, you do the regular harmless error standard. We think it follows from that that when the error has been forfeited, not preserved and there's no constitutional concerns, you do the regular plain error analysis. And I think it would be unilateral. Kennedy, are you telling us that even if there's a significant risk that the sentence was too high, in this case there can be no relief? Not at all, Your Honor. Is that the government's position? Not at all, Your Honor. If the defendant makes a case-specific showing of a significant risk or reasonable probability, then the defendant would clear prong 3 of the plain error. Do you think the two are equivalent, a risk and a probability, or interchangeable? We're going to change our law now so that plain error is overcome by just a significant risk? I don't think so, Your Honor, and if I could just ask you the question. But you've accepted it. You seem to say that significant risk and reasonable probability are one and the same. I don't think they're one and the same at all. I think they're quite different. This was going to be the second part of my answer to Justice Kagan, which is I actually think that the framing it in terms of risk, looking at how Pew analyzed the issue, actually lines up almost exactly with how this Court handled the error at issue in Marcus. Marcus from 2010. Marcus was about whether a defendant had been improperly convicted in violation of the due process clause based on pre-enactment conduct. And this Court said the risk that that's going to happen can be ameliorated by certain things that a judge does, but that risk is going to vary by case. And the Court said in that situation where there's a risk and it varies, we're going to hold required a regular individual showing of prejudice. Now, does that individual showing, can it be made on the basis purely of the mistake in the guidelines? There was no extraneous evidence. If you have a case where the erroneous range is 20 to 40 and the judge gives 20 and the correct range is 0 to 20, is that a case in which the defendant has established a plain error? With the caveat that we'd want to know a little bit more about the facts and circumstances of the case? I don't want to know anything more about it, because if the judge is within the guidelines, he doesn't have to say anything more about it. I think, Your Honor, if that's all you knew, if it was truly, if it's all you knew, I would say the defendant probably has met his burden in that case. Okay. So now let's say, I mean, this is why the problem is whether you want to call it a presumption or whatever, is so difficult. What if the guideline was 20 to 40 and the judge said 30, and the correct guideline was 0 to 30? In other words, he's half in the middle of the wrong one. Do you say, well, maybe it's an error, maybe it's not? What in that case? I think I can't give you a concrete answer without knowing more about the facts and circumstances. And that's not what's not. That's why I don't understand why it's one answer, 0 to 20 and 20 to 40, and another answer when it's 0 to 30 and 20 to 40, when it's halfway as opposed to just at the bottom. Well, I think, Your Honor, the Court was faced with a similar situation in the Davila case from a couple of terms ago, where the Respondent in that case had argued that, and that would then involve judicial participation in plea discussions. And the Respondent in that case argued, well, the court's appeals are just finding all these prejudices and reversing them anyway. Don't bother doing case-specific prejudice. Let's come up with an automatic reversal rule. And this Court said no. It said serious errors are going to be corrected on plain and harmless error review, but do a full record assessment in each case. And that's really all we're asking the Court to say here is, full record assessment like in Davila. Ginsburg. But in most sentencing guidelines cases, certainly in this case, the judge says nothing. He's told the probation officer these are the guidelines, and the judge says, okay, I sentence him at the bottom, period. Doesn't explain why. And there's got to be many, many guideline cases where that's exactly what happens. The judge doesn't explain it. We have told the judge he doesn't need to explain it if he sentences within the guidelines. So what you do is what I think must be the bulk of the cases where the judge just sentences within the guidelines and says nothing one way or another to explain it. Well, I'm not sure, Your Honor, that's the bulk of the cases. You have the variant. But you would agree that at least there are many cases where the judge just sentences within the guidelines. There are many cases, but I think you run into the same problem as in Davila. You run into a problem of categorization. Are we going to change the entire framework, change the rules that we use in plain and formal searches? Breyer, Well, you've heard the argument, but I suspect, and you may know this empirical point better. I think there probably are a lot of cases where the issue is the sentence, and the appeal will be, include something like this, in some subset there will be a plain error question. And all you'll really have is what the judge did. Now, of course, if the government has more, all you would be saying is that this in and of itself shows a risk in this circumstance, the reasonable probability, whatever standard you're using. Of course the government's free to show that there's something different about this, it wasn't harmful. It might have been the window washer, you know, and the government is free to show that. So why is this so difficult? It's important, Justice Breyer, to recognize, as I understand what you've posited, that is a shift in the risk, whether you call it the risk of non-persuasion. It means after the government coming forward with something else, the defendant wins. That's the exact opposite of what usually happens in a problem of categorization. Breyer, Well, you're saying it's a shift in the risk. The government has the burden of proving that it was raining. It's not a shift in the risk to say that the evidence that I mentioned proves rain, and it's not a shift in the risk to say that the defendant can come in and show it was the window washer. The question is whether the burden which lies with the defendant is satisfied if all there is, is that the judge applied the wrong guideline. And given the continuous statement in case after case in this Court that, of course, judges, whether they apply the guideline or depart, the guidelines play a significant part in the sentence that occurs, if all you have is that, you've satisfied the substantial, whatever it is, you know, what is it called, the substantial effect? I think it does matter what it is, Justice Breyer. Of course it matters. It matters what it is. I just can't think of the words. It's reasonable probability of a lower sentence. No. Well, it doesn't say that in Alano. It says in Alano, in Rule 52b, it says a plain error that affects substantial rights, and if it is the case, factually, as this Court has said it is, that applying the guideline that you apply makes a difference to the sentence that does affect substantial rights. He's just borne the burden of proof by showing. I don't see why that's different than any other problem of proof. I think it's quite different, Your Honor, and if I could use the example of this Court decision in Puckett v. United States, this Court has already spoken to how plain error works in one very serious sentencing error, the government's breach of a guidelines-related plea promise at sentencing in Puckett. And the Court said not just you do plain error, it works in the usual way, because procedural errors at sentencing, and the Court cited as an example a misapplication of the career offender guideline, because procedural error at sentencing is amenable to harmless error review. And so we're going to hold the defendant to his usual burden, because it's under Rule 52b, not 52a. So don't you usually have a plea colloquy or something in the record in those types of cases? You do, just as you have a sentencing charge, Your Honor. Well, no, if it's the sentences within the guidelines, the judge doesn't have to say anything at all. So it's very difficult for the defendant to go back and say, here's what the error was, even though there's also a clear error, a plain error, in what the original calculation was. I do want to dispute one of the key factual premises there. It's not that the judge has to say nothing at all. Depending on the spread of the range, by statute the judge is required, this Court's decision in Reda requires that if the defendant makes a non-frivolous request for a variance, the judge is choosing the guidelines range, agreeing with the commission's recommendation, instead of giving that non-guideline sentence, the judge has to explain that as well. Alitoso, if we accept the proposition that in every case in which there is an incorrect identification of the guidelines at the time of sentencing, there has to be a remand, unless the government can prove with some sort of evidence that it was harmless, would there be any difference between the standard in a case where there was an objection and a case where there was no objection? Burschel, not on prong 3, Your Honor, as far as I can tell. The Petitioner's briefs have been a little bit less than clear on what exactly he thinks the government's burden is, but I heard him say today, and I believe the citations at page 47 of his brief also indicate that the standard would be the Williams v. United States harmless error standard. The government would have to show no effect on the sentence. That's to persuade the court of appeals, the sentence would have been the same absent the error. Roberts, but there are the other factors under the Olano test. There are, Your Honor. I would agree that prong 2 does some work in these cases, not as much in other settings, because courts of appeals look at the plain language of the guidelines in the application notes and believe that this follows from that language. And more importantly, on prong 4, which Mr. Crooks mentioned earlier, he would not embrace the Fifth Circuit's application of kind of a fact-intensive, case-specific prong 4 analysis. And the two courts of appeals that have adopted presumptions of prejudice on the guidelines issue have both either or the Tenth Circuit explicitly says we presume at prong 4 as well. So I think it's very unclear whether prong 4 will do any work in these cases. One other thing I want to mention about the court of appeals. Kennedy, to the extent that our decision is influenced by our considerations of what kind of a burden, say, the Petitioner's proposed rule would put on the resources of the court, is there anything we can look to, or can you or your co-counsel, your colleague for the Petitioner, tell us how often sentencing guidelines occur in 20 percent of the cases, 5 percent of the cases? And when they do, is it that disruptive to ask the district court, what would you do, remand? A couple of points. On the statistics, I believe they're collected in footnote 14 of Petitioner's brief, and there are something like 4,500 procedural sentencing appeals, about 2,400 of those are sentencing guidelines appeals, and about 20 percent of those, or about 480, are reversed. We haven't been able to ascertain how many of those are plain error cases versus harmless error cases, but it's a substantial number across the judicial districts every year. In terms of the cost, Petitioner's position is that it's less costly than remand for a retrial. We don't dispute that, but we think it's not costless. The en banc Third Circuit, in a recent procedural sentencing error case, explained it's not costless at all. You have to reconvene the parties, the judge, on a very busy, especially in Texas, a very busy district court calendar, has to find a spot, reconvene the parties, transport a defendant from a distant location. And then, of course, we've collected in the appendix to our brief, situations where the remand for resentencing generates another round of appeals. Breyer. But what you have not put in your brief, I don't think, is that they have, in several circuits, created a system where there is a limited remand for purposes of finding out just what the judge thought about it. That's not perfect, but it seems to be workable, and not quite as expensive. But I think the real difference between us, and you can – I'm bracing this because I see no reason you shouldn't address it squarely, is I don't think this is a Rule 52b case. You say, it's not about how to interpret Rule 52b, or 52a, or Olano. It's a case about guidelines. It is a case about what the guidelines are and how they affect a sentence. And once we work that out, the answer will be obvious, because I'm not going to disagree with your interpretation of Olano or 52. But I am going to disagree about what you think the effect of failing to apply the right guideline is in the mine run of cases. And once, if you agreed with me about that, this case would be over, or if I agreed with you. Between us, we'd end it. But that's so – so that's where the – I mean, the others might have some views, too. But do you see – do you see why I'm – do you see why I keep pushing you in that direction? I do, Your Honor, and I understand the point. I guess the way I try to breach the gap between perhaps our positions is to recognize that in our view, Rule 52 is a capacious, entire record, full record inquiry, and I think it leaves room. It accommodates judges' intuitions about how likely given errors are to have an effect in certain cases. And so our basic position here, our most fundamental position is, don't blow up the 52b framework. Don't blow up the Rule 52 framework this Court has applied in a number of cases and create, I think, two major problems. One is the anomaly I mentioned with Puckett earlier, that you're going to have courts saying, well, the Supreme Court in Puckett said one kind of sentencing error doesn't get a presumption to the usual one, but a different kind of sentencing error in Molina Martinez gets a different kind of treatment. That's a problem. Ginsburg. I see. Ginsburg. Does it matter that this kind of error is never strategic? This is not an objection that a lawyer would deliberately hold back. This is a lawyer making a mistake by relying on what the probation officer said. I mean, there is practically heavy reliance on that pre-sentence report. I think the issue, Justice Ginsburg, is really incentives at the margins, right? That in these kind of cases, it's we want to do it, and that's what both Dominguez, Benitez, and Puckett say. We want to incentivize lawyers to make these. And if, indeed, the prong three inquiry ends up being no different, the defendant's argument ends up being no different in this class of cases under plain error than Harmel's error, it is marginally reducing the incentive to object on time. Sotomayor, you know, so much of this is the use of that word assumptions, presumptions, but both sides are doing it. This case came up because the Third Circuit has a presumption that if a corrected – it says it. We assume that if guidelines overlap, the wrong guideline and the right guideline overlap, that there's no way – we assume there's no way you can prove error or that it affected substantial rights. And there are a number of circuits who have said that. Overlapping guidelines, you can never prove. That seems that that's an assumption that's wrong under your articulation of plain error review. If that's what the Fifth Circuit were doing, I would agree with Your Honor. We don't think there should be a presumption either way. I think the Fifth Circuit, as other circuits have, have treated overlapping range cases a bit differently and have suggested that in those cases, because the judge's sentence still aligns with the commission's recommendation, we're just going to require a bit more. I think what the Fifth Circuit has looked for is something that's more concrete, that moves the dial from the speculative. Sotomayor, so let's go to Justice Alito's point. The more concrete here is that the parties were fighting about extremes. Sentence him, the government said to the high end. The defendant was arguing he's entitled to the low end. There is some additional proof there. The judge picks the low end. If the guideline is an anchor, which I think is almost undisputed, isn't that enough to say it affected substantial rights? We don't think so in this case. I'm going to make two points. One is we're not abandoning our position that this fact-specific issue is not properly before the Court. We'd urge the Court to take a close look at Fry v. Plyler, which involved very similar circumstances. But on the merits, I think they're really – both sides can point to kind of two factors in their favor on the plain error issue. The defendant can point to the factors that Your Honor mentioned. I think on our side is the overlap in the range and the nature of the error here. This is an error that can seem kind of abstruse. It's because of the happenstance of when arrests and sentencing were sequenced. The defendant has two criminal – two recent felony convictions that aren't counted at all, just drop out of the calculation. And the commission realized that could happen in these cases, and so put in not just a general departure note, but a specific application note recommending a departure in this kind of a case when this kind of underrepresentation of criminal history happens. Sotomayor, except the judge knew that he could have departed upwards under the old guideline because this criminal history was pretty serious. You argued he was entitled to the – to the and should sentence at the upper end, and yet the judge sentenced him at the low end. So the criminal history had less effect on the judge than it has on you, or perhaps on me. Right. Well, I think that maybe that's true, Your Honor. I guess I would just say that I think these are all factors and that if we're looking at case-specific determination here, I think the court of appeals could reasonably conclude, kind of balancing those four facts I mentioned, that the defendant had shown a possibility, no doubt, of a low sentence. I think it's a close case, but not a reasonable probability. The last point I wanted to make, Your Honor, was just that we mentioned the courts of appeals experience on this point, and I think it's useful to look at what happened in the Third Circuit in terms of whether this kind of presumption could be confined to the sentencing guidelines. In 2001, the Third Circuit, a decision called Adams, first announced it was going to presume prejudice for the denial of allocution, denial of a defendant's right to allocutive sentencing. A few months later, it adopted, relied on Adams to find a presumption of prejudice for sentencing guidelines errors. The next year, it applied those precedents to find a presumption of prejudice for constructive amendments to indictments, and in 2005, when Booker came down from this Court, it then applied those precedents to find a presumption of prejudice for Booker error, for sentencing under mandatory sentencing guidelines. I think it's going to be very difficult to confine this. Mr. Crooks makes the point in his reply brief that the courts of appeals have been relatively restrained in finding errors. One can debate that, but I think the point is if this Court endorses the presumption of prejudice for the first time, I think it's highly unlikely it's going to stay just in the guidelines context, just because of the anchoring effect that the Court recognized in Peugh. And if there are no further questions, we'd ask that the judgment be affirmed. Roberts Thank you, counsel. Mr. Crooks, you have four minutes remaining. Crooks With respect to Justice Kennedy's question about the burden on the district courts of resentencings, we would point out that several lower courts, in opinions we cited in the brief, have pointed out that a resentencing is not all that burdensome, especially in light of the benefits of assuring that defendants are not serving more prison time than the district court wanted them to do. I did also want to address the government's point about the government touched on the issue of overlapping ranges versus ranges that don't overlap, and we just wanted to point out that the effect of the guidelines is the same, regardless of whether the correct and incorrect ranges overlap or not. It's simply that the degree of the error, the amount of excess imprisonment that is produced, will be different. It will be lower in the case of an overlapping range. But as this Court said in Glover v. United States, any extra amount of imprisonment affects substantial rights. Finally, I just wanted to say that the courts of appeals have overwhelmingly recognized, whether you call it a presumption or not, that it is warranted to find that a change in the guideline range affected a defendant's substantial rights because of the extreme likelihood that a guideline range error will skew the sentence. And the lower courts have found in their experience that it's necessary to make that inference because of the great difficulty in the typical case of showing a case-specific effect of the type that the government is arguing for here. And these two factors mean that this inference or presumption, whatever it's termed, is necessary to avoid in many cases the injustice of excess imprisonment. And it will not blow up Rule 52b, as the government warns. It's a modest tweak to one prong of the rule that will help the rule serve its basic purpose of fairness. And for these reasons, we ask that the Court reverse the judgment below and remand the government for further proceedings. Roberts. Thank you, counsel. The case is submitted.